[Cite as *In re B.E.S.*, 2011-Ohio-6746.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| IN THE MATTER OF: | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| B.E.S. (DOB 06/06/06) | : | Hon. Sheila G. Farmer, J. |
| A.E. (DOB 11/06/08) | : | Hon. Patricia A. Delaney, J. |
| R.E.S. (DOB 12/04/09) | : | |
| | : | Case No. 2011CA00195 |
| | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                            Pleas, Juvenile Division, Case No.
                            2010JCV00622


JUDGMENT:                   Affirmed


DATE OF JUDGMENT:           December 27, 2011


APPEARANCES:

For Appellant                    For Appellee

AARON KOVALCHIK                  LISA A. LOUY
116 Cleveland Avenue, NW         221 Third Street, SE
Suite 808                        Canton, OH  44702
Canton, OH  44702


*Farmer, J.*

{¶1} On May 3, 2011, appellee, the Stark County Department of Job and Family Services, filed a complaint for permanent custody of B.E.S born June 6, 2006, A.E. born November 6, 2008, and R.E.S born December 4, 2009. Mother of the children is Charley Eakle; father is appellant, Donald Sanders, II. The children had been adjudicated abused and placed in appellee's temporary custody on August 16, 2010. A hearing was held on August 3, 2011. By judgment entry filed August 8, 2011, the trial court granted permanent custody of the children to appellee. Findings of fact and conclusions of law were filed same date. A nunc pro tunc judgment entry to correct a misspelling was filed on August 16, 2011.

{¶2} Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:

I

{¶3} "THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

II

{¶4} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I, II

{¶5} Appellant claims the trial court's findings that the children could not be placed with him in a reasonable time and the best interests of the children would be best served by granting permanent custody to appellee were against the manifest weight and sufficiency of the evidence. We disagree.

{¶6} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App. No. CA-5758. Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction* (1978), 54 Ohio St.2d 279.

{¶7} R.C. 2151.414(E) sets out the factors relevant to determining permanent custody. Said section states in pertinent part as follows:

{¶8} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:

{¶9}   "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.   In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

{¶10}   "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

{¶11}   "(16)   Any other factor the court considers relevant."

{¶12}   R.C. 2151.414(B) enables the court to grant permanent custody if the court determines by clear and convincing evidence that it is in the best interest of the child.   Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, paragraph three of the syllabus.   See also, *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361.   "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will

examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross,* at 477.

{¶13} R.C. 2151.414(D) sets out the factors relevant to determining the best interests of the child. Said section states relevant factors include, but are not limited to, the following:

{¶14} "(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

{¶15} "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

{¶16} "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period***;

{¶17} "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

{¶18} "(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."

{¶19} In its findings filed August 8, 2011 as to whether the children could be placed with appellant within a reasonable time, the trial court found the following:

{¶20} "1. Case worker Stacy Senff testified that the children in question had been in the agency's emergency custody since June 7, 2010, and in the agency's temporary custody since August 16, 2010.

{¶21} "2. ***Ms. Senff testified that Father has completed an evaluation at Quest and Northeast Behavioral Health. However, Father recently tested positive for cocaine in April 2011. Father is not close to completing a 52 week anger management course at Melymbrosia, and has not done Goodwill Parenting or found stable housing and employment. Ms. Senff testified that Father admitted he could not care for children.

{¶22} "3. Dr. Amy Thomas testified that Father has drug issues and anger management issues that are unresolved.

{¶23} "4. Harry Lowers, a Quest Counselor, testified to Father's involvement in a relapse program.

{¶24} "5. Ms. Sandra Fronimo testified Mr. Sanders is not close to completing the Voyager Anger Management program.

{¶25} "6. Ms. Seneff [sic] testified that Mother and Father failed to support, communicate or visit with their children.

{¶26} "7. The agency has made reasonable efforts in an attempt to remediate the concerns which were the cause of the children's original removal. The parties failed continuously and repeatedly to substantially remedy the conditions which were the bases for the children's removal from the family home."

{¶27} Appellant completed his Quest evaluation and started the Voyager program (T. at 12, 68); however, appellant has not bonded with the children because of a no-contact order in place. T. at 6, 7, 20. Appellant has not established stable

independent living, although it was conceded that this issue was not the linchpin of the trial court's determination. T. at 14, 23-24. It was the trial court's opinion that appellant was unable to care for three small children, one with periventricular leukomalacia and cerebral palsy, and one who was physically abused and greatly traumatized by witnessing domestic violence and the premature birth of a sibling into a toilet. T. at 15-16, 41, 81. Appellant admitted to Ms. Senff that he was concerned about safely caring for the children. T. at 16.

{¶28} Dr. Aimee Thomas, who completed a parent evaluation on appellant, opined he demonstrated a lack of attentiveness to the needs of the children and a lack of attachment to the children. T. at 46-47. Appellant "reported anger management problems were a source of concern, as he may not have the patience to deal with the special needs of both of these children." T. at 49. Dr. Thomas had little confidence in appellant's ability to make changes given the fact that he lacks "insight into concerns with his anger management. His minimalization of substance abuse issues. As well as the clear special needs of these children." T. at 50. Dr. Thomas explained the children needed a parent "who's hyper vigilant, and willing to insure that these children never ever experience another traumatic incident, such as physical abuse, sexual abuse, or exposure to domestic violence." Id. Dr. Thomas opined it was questionable whether appellant would ever be able to do that. Id.

{¶29} Although each parent should be viewed separately, it is necessary to view the entire pattern of abuse as the parents "have an on again off again relationship." T. at 25, 50. Because of the parents' joint inabilities involving drug abuse, domestic violence, and lack of concern for the children by having a known sex offender in their

home, it is clear they jointly and separately are unable to provide for the needs of the three small children, all under the age of five.  T. at 8-11, 46.

{¶30}  Appellee was informally involved with the family six months prior to the Juv.R. 6 intervention in June of 2010.  T. at 4-5.  Services were offered to mother, but she was unsuccessful.   T. at 8-11.   Appellant cooperated, but was defensive to treatment, and admitted he lacked the patience and ability to safely care for the children.  T. at 16, 45, 49, 52.

{¶31}  Upon review, we find the trial court did not err in finding that the children could not be placed with appellant within a reasonable time.

{¶32}  As for best interests, the trial court found the following:

{¶33}  "6. The Court finds that there is minimal bond between Mother and Father and these children.

{¶34}  "7. The Court finds that Mother and Father have completely failed to support or visit with their children as he (sic) have never contacted SCJFS to inquire into the well-being of their children.

{¶35}  "8. The Court finds that it is the agency's testimony that a grant of permanent custody would be in the best interest of the children of this case as the parents are either unable or unwilling to provide a safe and stable environment for the children."

{¶36}  Unfortunately, it is clear that the youngest child will need extensive care due to the fact that the child suffered a traumatic head injury at birth, was born drug positive, has been diagnosed with cerebral palsy, and has sustained multiple broken bones from physical abuse.  T. at 81.  As the cited testimony indicates, neither parent is

equipped to meet the child's special needs. The older children act out, and one child is severely traumatized by the sexual and physical abuse which occurred in the home and by witnessing the birth of a sibling into the toilet. T. at 79-80.

{¶37} The children are in a foster-to-adopt home that has the ability to care and manage the children. T. at 84-85. The children have bonded with everyone in the household. T. at 85. No bond exists between the children and appellant and mother. T. at 86.

{¶38} Upon review, we find the trial court did not err in finding the best interests of the children were best served by granting permanent custody to appellee.

{¶39} Based upon the evidence contained in the record, we find the trial court did not err in granting permanent custody of the children to appellee.

{¶40} Assignments of Error I and II are denied.

{¶41} The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.

By Farmer, J.

Gwin, P.J. and

Delaney, J. concur.

s/ Sheila G. Farmer_____

_s/ W. Scott Gwin_____

s/ Patricia A. Delaney_____

JUDGES

[Cite as *In re B.E.S.*, 2011-Ohio-6746.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| IN THE MATTER OF: | : | |
| | : | |
| B.E.S. (DOB 06/06/06) | : | |
| A.E. (DOB 11/06/08) | : | |
| R.E.S. (DOB 12/04/09) | : | JUDGMENT ENTRY |
| | : | |
| | : | |
| | : | |
| | : | CASE NO. 2011CA00195 |


For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed. Costs to appellant.


s/ Sheila G. Farmer_____


 s/ W. Scott Gwin_____


s/ Patricia A. Delaney_____

JUDGES